UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>　　　　　　　　　　　　　　　　)<br>　　Plaintiff,　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　v.　　　　　　　　　　　　　　) <br>　　　　　　　　　　　　　　　　)<br>RAYMOND L. MOSBY,　　　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　Defendant.　　　　　　　　　) | Cause No. 2:23-CR-102-PPS-JEM |

**OPINION AND ORDER**

A 2-count indictment was returned against Defendant, Raymond L. Mosby, charging him with making false statements in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6) (Count 1), and that he made a false statement regarding information required by law to be kept in the records of a federally licensed firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) (Count 2). [DE 1.] Specifically, the indictment alleges Mosby falsely represented he was the actual buyer of a firearm[1] listed on ATF Form 4473, when in fact he knew he was purchasing the firearm for another person (in other words, it was allegedly a straw purchase). [DE 1 at 1.]

A final pretrial conference in this case was set for April 19, 2024, and trial for May 6, 2024. [DE 29.] At the ninth hour, Mosby filed a motion for dismissal of both charges, arguing the Second Amendment to the United States Constitution, as recently construed by the Supreme Court in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111

---

[1] It is unclear whether Mosby purchased one or two firearms. The indictment refers to "a firearm" [DE 1 at 1, 3], Mosby's motion to dismiss mentions the sale of 2 firearms, [DE 30 at 1], and the government's brief refers to one [DE 32 at 2]. For the purpose of this motion, I will refer to a singular firearm, but it might later be established that Mosby purchased two.

(2022), protects his right to possess a firearm and the statutes are unconstitutional as applied to his case. [DE 30.] In a nutshell, he argues "[t]he challenged statutes are no longer legitimate constitutional criminal regulations after *Bruen*." [DE 30 at 2.]

Although Mosby alleges his constitutional rights are being violated, I cannot see how. I remain convinced that both section 922(a)(6) and 924(a)(1)(A) are constitutional. *See, e.g., United States v. Campbell*, 2:22-cr-23 (N.D. Ind. Mar. 14, 2023) [DE 31]; *United States v. Jones*, 2:22-cr-66 (N.D. Ind. June 21, 2023) [DE 57]; *United States v. Ladd*, 2:22-cr-57 (N.D. Ind. June 21, 2023) [DE 47.] And my prior rulings are in line with all of the other courts in this district that have ruled on this issue. *See United States v. Hulitt*, No. 2:22-cr-88 (N.D. Ind. May 18, 2023) [DE 43] (Moody, J.); *United States v. Hill*, No. 1:22-cr-61 (N.D. Ind. April 6, 2023) [DE 29] (Brady, C.J.); *United States v. Valentine*, No. 2:20-cr-117 (N.D. Ind. March 20, 2023) [DE 84] (DeGuilio, J.); *United States v. Scheidt*, No. 1:22-cr-49 (N.D. Ind. April 10, 2023) [DE 31] (Brady, C.J.). Mosby can keep and bear (and buy) all the firearms he wants. All he has to do is tell the truth when he is buying firearms of his choice. Because the statutes being challenged do not deny Mosby his right to bear arms, but are rather statutory requirements to be truthful, the motion to dismiss is DENIED.

**Factual Background**

On June 28, 2021, defendant Raymond Mosby completed ATF Form 4473 to buy a firearm. [DE 1.] According to the exhibit attached to Mosby's motion, a warning appeared on the top of one Form stating:

> **WARNING:** The information you will provide will be used to determine whether you are prohibited from receiving a firearm.

> Certain violations of the Gun Control Act, 18 U.S.C. 921 et seq., are punishable by up to 15 years imprisonment and/or up to a $250,000 fine . . . .

[DE 30-1 at 1.] The form asks:

> Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheets . . . **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you**.

[*Id.* (emphasis in original).] Mosby falsely represented he was the actual buyer/transferee of the firearm. Mosby then signed the form, certifying that his answers were true, correct, and complete, and with knowledge that "making any false oral or written statement . . . is a crime punishable as a felony under Federal law." [DE 30-1 at 2.] He further certified that he knew that if he was "not the actual transferee/buyer" that he was committing a "crime punishable as a felony under Federal law." *Id.*

In October 2023, Mosby was charged with a two-count indictment. Count One alleges that Mosby violated 18 U.S.C. § 922(a)(6) when he knowingly made false and fictitious statements in the acquisition of a firearm (specifically that he lied about purchasing the firearms for another person). That statute makes it illegal to make a knowingly false statement "intended or likely to deceive [a licensed dealer] with respect to any fact material to the lawfulness of the sale or other disposition of [a] firearm or ammunition under the provisions of this chapter [Title 18, Chapter 14]." 18 U.S.C. § 922(a)(6). Count Two alleges a violation of 18 U.S.C. § 924(a)(1)(A) which is a record

3

keeping provision that prohibits false representations on a form required by law to be kept by the federal firearms dealer.

## Discussion

A defendant can move before trial to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Such a motion can be made on the basis that the charged offense is based on an unconstitutional statute. *See United States v. Holden*, 638 F.Supp.3d 931, 935 (N.D. Ind. Oct. 31, 2022). That is the basis upon which Mosby seeks dismissal of the indictment in this case.

A constitutional challenge to a statute can be brought either as a facial challenge, or an as-applied challenge. Mosby brings both types of challenges against the two statutes at issue here—§§ 922(a)(6) and 924(a)(1)(A). [DE 30 at 1, 3, 7.] To succeed on a facial challenge to the constitutionality of a statute, the moving party must show that the statute is unconstitutional in all applications. *City of Los Angeles. v. Patel*, 576 U.S. 409, 415, 418 (2015). To succeed on an as-applied challenge, the moving party must show it is unconstitutional because of the way it was applied to the particular facts of their case. *See United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

What this means is that if a statute is constitutional as applied to the defendant, then any facial challenge to the statute must necessarily fail as well. *United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). At the end of the

4

day, though, I think this is all a distinction without a difference, because no matter how you characterize Mosby's attack on the statutes at issue, it still fails.

The Second Amendment states: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. In *District of Columbia v. Heller*, the Supreme Court identified the "core" of the Second Amendment as: "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The Court made clear, though, that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. A few years later, a plurality of the Court in *McDonald v. City of Chicago*, 561 U.S. 742, 768 (2010), repeated its assurances that *Heller* "did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms . . ."

After *Heller*, the Seventh Circuit advanced a two-step test for looking at Second Amendment challenges. *See, e.g., Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019), abrogated by *Bruen*, 142 S.Ct. 2111 (2022). The threshold question in this framework was "whether the regulated activity falls within the scope of the Second Amendment." *Id.* at 441. Then, "if the historical evidence is inconclusive or suggests that the regulated activity is *not* categorically unprotected," courts conducted "a second inquiry into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* (emphasis in original).

However, in *Bruen*, the Supreme Court held that the two-step approach was "one step too many." *Bruen*, 142 S.Ct. at 2117. *Bruen* involved a New York law making it a crime to possess a firearm without a license, both inside and outside the home. A person could obtain a license for a firearm, but they had to demonstrate a specific need for self-defense. *Id.* The Court held the Second Amendment protects an individual's right to carry a handgun for self-defense both in the home and outside of the home, and that New York's licensing plan violated the Constitution. When evaluating whether a regulation on Second Amendment rights is constitutional, *Bruen* instructs the courts to use the following standard:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'

*Id.* at 2129-30. It is important to note that the majority opinion in *Bruen* did not address the "longstanding prohibitions on the possession of firearms by felons . . . or laws imposing conditions and qualifications on the commercial sale of arms" that the Court previously called "presumptively lawful." *Heller*, 544 U.S. at 626, 627 n.26. What this means is that the Supreme Court has never held that lying on a federal firearms transaction report is protected Second Amendment activity. In fact, *Heller* strongly suggests otherwise. Likewise, no federal appeals court (as far as I know) has ever found

6

the two operative statutes unconstitutional whether it be before or after *Bruen* was announced.

Mosby nevertheless contends that the Second Amendment protects his conduct at issue in both statutes §§ 922(a)(6) and 924(a)(1)(A) because they cover the means and process to possess and receive a firearm. [DE 30 at 7.] Mosby argues his "prosecution is based on his completion of Form 4473, which itself conditioned his firearm possession on providing constitutionally protected information regarding whether he was the actual buyer or not." *Id.* He believes the statutes burden activity protected by the Second Amendment (i.e. the right to bear arms), and in applying the *Bruen* analysis, they are unconstitutional because there is no evidence showing a national firearm history and tradition of supporting these statutory restrictions on firearm possession and receipt. [*Id.* at 6-7.]

Fortunately, I do not have to play historian in this case (perhaps I will in others) because Mosby has not advanced any argument that the statutes requiring honest answers on the 4473 Form restrict *his* right to bear arms, or *his* right to self defense. *See, e.g., United States v. Gay*, No. 23-2097, 2024 WL 1595285 (7th Cir. Apr. 12, 2024) (not going down the historical interpretation path in a felon in possession case, instead finding the petitioner was not a law-abiding, responsible person who had a constitutional right to possess firearms.)

The government relies heavily on the case of *United States v. Holden*, 70 F.4th 1015 (7th Cir. 2023). That case involved a person who sought to buy a firearm and also had to

7

complete ATF Form 4473, who falsely answered that he was under indictment or information for a felony at that time. *Id.* Mosby points out in his reply brief that Holden did not contend, and the district court didn't find, that there was a constitutional problem with § 922(a)(6). [DE 33 at 2.] And Mosby emphasizes that he *does* contend there is an independent constitutional problem with section 922(a)(6) and 924(a)(1)(A). *Id.* But that argument doesn't lessen the Seventh Circuit's broad stance that "[t]he power to collect accurate information is of a different character – and stands on a firmer footing – than the power to prohibit particular people from owing guns." *Holden*, 70 F.4th at 1017. Moreover, *Holden* went on to discuss a line of Supreme Court cases holding "false statements may be punished even when the government is not entitled to demand answers." *Id.* Mosby's attempt to distinguish *Holden* is flimsy - he claims Mosby's case occurred *before* he provided answers on Form 4473, through the requirement that he must complete the Form in order to possess a firearm - and this exact argument wasn't considered in *Holden*. [DE 33 at 2.] This is a distinction without a difference - Mosby needed to complete the Form if he wanted to purchase a firearm, and it doesn't matter when he claims the constitutional violation occurred.

Mosby concentrates on the dictionary definition of "infringe," arguing his Second Amendment rights have been unconstitutionally "infringed." [DE 33 at 3.] But in the words of *Bruen*, nothing in the "plain text" of the Second Amendment even covers Mosby's conduct—lying in the acquisition of firearms. *Bruen*, 142 S.Ct. at 2117. As I said

at the outset, Mr. Mosby can bear all the arms he would like. What he cannot do is lie on the form, telling the gun shop that the gun is for him, when in fact it is not.

Aside from the courts in this district that concur, several courts around the country have arrived at the same conclusion finding section 922(a)(6) constitutional after *Bruen*. For example, here's how one court put it when analyzing the same statute involving false statements made during the acquisition of firearms:

> Mr. Gonzalez has put forth no arguments to demonstrate how any of the challenged counts regulate or restrict conduct protected by the Second Amendment—namely the Defendant's ability to possess firearms for self-defense. Rather, the violations involve false statements to acquire firearms, the repeated transfer of firearms without a license, and proceeds derived from those activities. These types of regulations do not in any way limit Mr. Gonzales' ability to defensively arm himself. And without this initial showing, *Bruen's* analysis is unnecessary and unwarranted.

*United States v. Gonzalez*, No. 1:22-CR-00054, 2022 WL 17583769, at *2 (D. Utah Dec. 12, 2022). *See also United States v. Soto*, No. SA-22-CR-302-J.P., 2023 WL 1087886 (W.D. Tex. Jan. 27, 2023) (finding § 922(a)(6) constitutional); *United States v. Tilotta*, No. 3:19-cr-04768-GPC, 2022 WL 3924282 (S.D. Cal. Aug. 30, 2022) (holding similar statutes and regulations are constitutional); *United States v. Porter*, No. 3:22-00044, 2023 WL 113739 (S.D. W. Va. Jan. 5, 2023) (finding § 924(a)(1)(A) constitutional). I concur completely with the analysis in these cases.

What's more, *Bruen* doesn't even mention a case decided by the Supreme Court well after *Heller* which concerns federal firearms regulations: *Abramski v. United States*, 573 U.S. 169 (2014). *Abramski* dealt with the very statute at issue here: 18 U.S.C. §

922(a)(6). The Court in *Abramski* started its analysis by talking about how "[f]ederal law has for over 40 years regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands." *Id.* at 172. The court then went on to talk about how the firearms "statute establishes a detailed scheme" to regulate a number of things such as the "buyers name, age and place of residence." *Id.* (internal quotations omitted). *Abramski* addressed these commonsense regulations without even mentioning the Second Amendment. *Bruen* doesn't even cite to *Abramski*. Yet Mosby would have me believe that somehow *Bruen* intended to upend the entire "detailed scheme" of federal firearms regulations without saying so. If that's what *Bruen* actually means, I'll let someone else arrive at that conclusion.

Finally, *Bruen* focused on the ability of "law-abiding" citizens to protect themselves. *Bruen*, 142 S.Ct. at 2133. In this case, I cannot say that Mosby was an "ordinary, law-abiding citizen" as that term is used in *Bruen*. *Id.* at 2122. For my part, I am hard pressed to conclude that someone who purposely lies in their acquisition of a firearm to arm someone else is the type of "ordinary, law abiding citizen" that the *Bruen* court was describing. In short, until I am told to the contrary by either the Supreme Court or the Seventh Circuit, I cannot say that someone who engages in a straw purchase of guns is a "law abiding" citizen deserving of Second Amendment protection. Of course, this all assumes that the government can prove that Mosby lied in the acquisition of a firearm. But that is what a trial is for.

**ACCORDINGLY:**

For the foregoing reasons, Defendant Raymond Mosby's Motion to Dismiss [DE 30] is **DENIED**.

**SO ORDERED**.

ENTERED: April 22, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT